UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DANIEL MONTENEGRO *et al.*,

                Plaintiffs,

      -against-

NEWREZ, LLC,

                Defendant.
-------------------------------------------------------------------X

**ORDER**

23-CV-00542 (GRB) (JMW)

**A P P E A R A N C E S:**

Ryan M. Eden, Esq.
Saul D. Zabell, Esq.
**Zabell & Collotta, P.C.**
One Corporate Drive, Suite 103
Bohemia, NY 11716
*Attorneys for Plaintiffs*

Christopher G. Massey, Esq.
**Maynard Nexsen P.C.**
551 Fifth Ave, Suite 1600
New York, NY 10176
*Attorney for NewRez, LLC*

Mark W. Bakker, Esq.
**Maynard Nexsen P.C.**
104 South Main Street, Suite 900
Greenville, SC 29601
*Attorney for NewRez, LLC*

**WICKS,** Magistrate Judge:

      Plaintiffs Daniel Montenegro and John Viteritti commenced this action against their employer, New Rez, LLC ("Defendant"), alleging "unlawful, national-origin/ethnicity based discrimination" pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.* In

1

particular, Plaintiffs claim discrimination against them based upon their Italian-American heritage.

Before the Court is Defendant's motion for a protective order to "ensur[e] that documents containing confidential information will be limited and not used outside of the litigation of this case," and will be destroyed once the case is concluded. (ECF No. 26.) Plaintiffs strenuously oppose this request, contending that such a protective order could have a potential chilling effect on prospective witnesses. (ECF No. 27.) For the reasons set forth below, Defendant's motion (ECF No. 26) is granted in part and denied in part. That is, with respect to "sensitive company documents," the motion is denied, but granted with respect to borrower and personnel information.

## BACKGROUND

New Rez, formerly New Penn Financial, LLC, is a nationwide mortgage lender and servicer. Plaintiffs were regional managers of Defendant's New York branch for approximately 12 years. (ECF No. 20 ¶¶ 20, 84.)

Plaintiffs, who are of Italian-descent, claim that despite meeting all company standards and goals, they were discriminated against based on their Italian-American heritage. (*Id.* ¶ 55.) They state that they "outpaced the performance of their co-workers/comparators" and their work contributed to the company's growth in revenue. (*Id.* ¶ 24.) In addition, Plaintiffs claim they were often denied support and resources. For example, Baron Silverstein, Plaintiffs' new supervisor, never visited the office but instead made discriminatory comments, stating that the office was filled with "greaseballs and old white guys." (*Id.* ¶¶ 32-33, 42, 53.) They were also the only regional managers who did not receive an invitation to the company's corporate holiday party, while all regional managers of non-Italian descent did receive an invite. (*Id.* ¶ 67.)

2

This treatment concluded with Plaintiffs' terminations on February 25, 2022 and they were replaced with non-Italian American employees "who had less seniority, less experience, and inferior performance metrics." (*Id.* ¶ 96.) Plaintiffs claim that throughout their tenure they never received a complaint or concern regarding their work performance. (*Id.* ¶ 79.) They were advised that they could only remain employed at the office if they agreed to accept demotions to Sales Manager and were given only three days to make this decision. (*Id.* ¶¶ 82-84.) Plaintiffs also allege that once they were terminated, Defendant (1) ended a "hiring freeze" that prevented Plaintiffs from expanding to other branches; and (2) lowered branch and individual performance goals for their branch. (*Id.* ¶¶ 88-89.) Plaintiffs aver that all of Defendant's actions confirm that their termination was based on their Italian-American heritage. (*Id.* ¶ 93.)

Defendant has filed a motion for a protective order to guard against the dissemination of "confidential and sensitive business, personnel, and borrower information." (ECF No. 26 at 1.) The documents demanded by Plaintiff include:

- Request Nos. 4 and 5: Documents supporting the gross-total volume in mortgage sales closed by Defendant's New York Branch and other branches for each year from 2016 through the present.

- Request No. 13: Internal memoranda or correspondence between Defendants' principals, agents, and employees, including but not limited to, text messages and e-mails, concerning the decision to terminate Plaintiff's employment.

- Request Nos. 16-17: Internal memoranda or correspondence between Defendants' principals, agents, and employees, including but not limited to, text messages and e-mails
  - concerning the restructuring of the New York Office from 2019 through the end of Plaintiff's employment; and
  - regarding the decision to delegate Plaintiff's job duties and responsibilities to Stacy Blair.

- Request Nos. 18-19: documents identifying weekly, monthly, and annual sales goals and/or metrics of Defendant's New York Branch and all other branches for each year from 2019 to the present.

- Request No. 20: Stacy Blair's performance evaluations.

(ECF No. 26-1) (Plaintiffs' First Request for Production of Documents.)

Defendant requests that the Court issue a confidentiality order so that the documents can be produced in this case. A confidentiality order can ensure the information requested will solely be used to litigate this case and destroyed once the case ends. (ECF No. 26.)

Plaintiffs attempted to remedy these sensitive issues by offering to redact the personal information in the files, such as social security numbers and full names. They oppose Defendant's motion, claiming that a confidentiality order would have a potential "chilling effect" on their possible witnesses and there are "less prejudicial means" to protect the information at issue. Specifically, they argue that potential witnesses would not feel "comfortable" being bound by a confidentiality order and may even fear reprisal from Defendant if they testify. (ECF No. 27.)

## **LEGAL STANDARD**

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). Upon the parties' demonstration of good cause, courts may grant a motion for a protective order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." *Id.; see also Gordon v. Target Corp.,* 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause"). For example, and as relevant here, the Court may grant such a motion if it requires divulging "confidential research, development, or commercial information not to be revealed." Fed. R. Civ. P. 26(c)(1)(G).

The burden is on the party seeking the protective order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*,

4

227 F.R.D. 53, 54–55 (E.D.N.Y. 2005); *Sea Tow Servs. Int'l, Inc. v. Tampa Bay Marine Recovery, Inc.,* No. 20-cv-2877 (JS) (SIL), 2021 U.S. Dist. LEXIS 268665, at *14 (E.D.N.Y. Apr. 20, 2021) (stating that the movant must demonstrate a "clearly defined and very serious injury that would arise from disclosure of the information"). Courts have "broad discretion… to decide when a protective order is appropriate and what degree of protection is required." *See In re Energetic Tank, Inc.*, 567 F. Supp.3d 453, 456 (S.D.N.Y. 2021) (alteration in original) (citation omitted).

"If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Rofail v. United States*, 227 F.R.D. 53, 55 (E.D.N.Y. 2005). "Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM)(JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted). It is against this backdrop that the Court considers the present application.

Courts have found that the countervailing interests at play in an employment discrimination suit, like here, are the employer's interest in maintaining the confidentiality of its internal files and protecting sensitive business files from competitors versus the plaintiff's interest in "gathering statistical evidence or other evidence of discrimination." *Diaz v. Local 338 of the Retail, Wholesale Dep't Store Union, United Food and Commercial Workers,* No. 13-CV-7187 (SJF) (SIL), 2014 U.S. Dist. LEXIS 124394, at *6 (E.D.N.Y. Sept. 3, 2014) (citing *Duck v. Port Jefferson Sch. Dist.,* No. 07-cv-2224, 2008 U.S. Dist. LEXIS 396395, 2008 WL 2079916, at *4 (E.D.N.Y. May 14, 2008)); *see also Garnett-Bishop v. New York Cmty. Bancorp*, No. 12- CV-

2285 (ADS) (ARL), 2013 U.S. Dist. LEXIS 2942, at *7 (E.D.N.Y. Jan. 8, 2013). In addition to the parties' interests, courts have also considered the privacy interests of third parties implicated by document disclosure. *Id.* at *6.

It is against this backdrop, that the Court considers the instant application.

## DISCUSSION

The Court first considers whether Defendant's business information should be protected by a confidentiality order. Then, the Court will consider whether personnel and borrower information should be produced subject to a confidentiality order.

### A. Sensitive Company Information

Plaintiffs request that Defendants produce "company-wide mortgage sales volumes, sales goals and metrics, and the rationale behind the company's decision to restructure" which ultimately led to Plaintiffs' termination. (ECF No. 26 at 2.) Plaintiffs state that a blanket confidentiality order should not be issued since prospective witnesses already have access to these files and are already bound by an internal confidentiality order set forth by the company. (ECF No. 27 at 2.) They contend that these requested business reports would demonstrate that Plaintiffs were outproducing their comparators when compared to other regions. (*Id.* at 3.) Plaintiffs further state that these documents should be redacted or, in the alternative, Defendant should produce a sample document for attorneys' eyes only and specify to Plaintiffs what to redact. (*Id.*)

Defendant relies on the fact that cases in this Circuit appear to routinely grant motions for protective orders concerning sensitive business information. (ECF No. 26 at 2.) However, absent from the application is any articulation as to how disclosure of the requested information would cause specific injury or harm. *Saks Inc. v. Attachmate Corp.*, No. 14-cv-4902 (CM), 2015 U.S. Dist. LEXIS 52867, at *47 (S.D.N.Y. Aug. 17, 2015) (stating that a movant cannot satisfy

6

its burden by simply "parrot[ing] conclusory buzzwords"). Without that, there is little justification for ordering confidential treatment.

Indeed, courts in this Circuit have *denied* motions for a protective order to conceal company information where the movant did not cite *any* concrete harm in divulging the information at issue. *See New Falls Corp. v. Soni,* No. 16-CV-6805 (ADS) (AKT), 2020 U.S. Dist. LEXIS 94747, at *33 (E.D.N.Y. May 29, 2020) (denying motion for protective order where defendant only stated what confidential information that the documents contained but "d[id] not explain the specific and serious injury that would result if the information were to be disclosed"). Relatedly, courts also deny motions where the harm alleged is purely speculative. *HSqd, LLC v. Morinville*, No. 11-CV-1225 (WWE), 2013 U.S. Dist. LEXIS 37356, at *8-9 (D. Conn. Mar. 18, 2013) ("Here, defendant has failed to demonstrate good cause for inclusion of a heightened 'highly confidential' designation because his alleged injury is entirely speculative in nature.").

Defendant New Rez only recites what Plaintiffs request and then subsequently cites a series of cases in this Circuit, stating that some of the information requested "undoubtedly falls" within the category of documents that courts regularly hold to be confidential business information. (ECF No. 26 at 2.) However, there is no mention as to how disclosure of these documents would harm the company. The only harm that Defendant even remotely alludes to is speculative: "Broadly request numbers 4, 5, 13, 16, 17, 18, 19, and 20 *potentially* seek sensitive business information, private personnel information, or *may* contain borrower information from Defendant's customers." (ECF No. 26 at 2 n.1) (emphasis supplied); *see also Shettles v. ABT Limousine Serv.,* No. 20-cv-05489-MKV, 2021 U.S. Dist. LEXIS 23564 (S.D.N.Y. Feb. 5, 2021) ("Defendants claim that 'some documents may contain sensitive, proprietary information.'"); *Charter Practices Int'l v. Robb,* No. 12-cv-1768 (RNC), 2015 U.S. Dist. LEXIS 34112, at *13

7

(D. Conn. Mar. 19, 2015) (finding that plaintiffs' concern that disclosure of the requested data would put them at a competitive disadvantage was purely speculative and fear of publishing and misstating information was not a basis for documents to be held confidential). Thus, Defendant has not demonstrated good cause to issue a protective order because its alleged injury is insufficient for the Court to grant its motion.

For these reasons, Defendant's motion for a protective order to shield business information is denied.

### B. Personnel Files and Borrower Information

Plaintiffs also seek information about non-parties which they claim are comparators in this Title VII/NYSHRL suit. Specifically, the information sought contains performance evaluations, metrics, and other communications as well as borrower information. (*See* ECF No. 26-1.) Among the personnel files sought here is that of Stacy Blair—the new manager of the New York branch, who was not of Italian descent and had only been at the company for two years. (ECF No. 20 ¶¶ 69-70.)

Plaintiffs again contend that a confidentiality order is unnecessary and would not protect the private information of third-parties since witnesses would have access to personal information. (ECF No. 27 at 2.) They alternatively offer to redact the personal information in these files to alleviate Defendant's concerns. (*Id*. at 1.)

"[C]ourts have generally characterized personnel files as confidential and found it appropriate to enter protective orders governing their use in litigation." *Garnett-Bishop*, 2013 U.S. Dist. LEXIS 2942 at *5-6 (citing *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71-72 (S.D.N.Y. 2010)); *see also Mitchell v. Metro. Life Ins. Co.*, No. 03-cv-10294 (WHP), 2004 U.S. Dist. LEXIS 21944 at *5 (S.D.N.Y. Nov. 2, 2004) ("Personnel files of Met Life employees containing personal identifying information of non-parties are to remain confidential" pursuant

to the governing protective order.); *Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18-cv-4476 (LJL) (SLC), 2020 U.S. Dist. LEXIS 232461, at *6-7 (S.D.N.Y. Dec. 10, 2020) ("[T]he [c]ourt finds that it is appropriate to keep the details and underlying facts of [Mascol's] disciplinary history confidential.").

Defendant again fails to cite to a particular injury that would be caused by the disclosure of documents. However, the sensitivity of the information in the personnel and borrower files of non-parties warrants protection. *Duling*, 266 F.R.D. at 73 ("[E]ven though defendants have not provided specific examples of harm to Gristede's employees, as plaintiffs request, the harm that would result from the disclosure of the undisputedly personal information contained in the personnel [files] establishes a particular need for protection."). Plaintiffs identify a multitude of personal identifiable information and sensitive information that would need to be redacted from the files: "social security numbers, immigration status information…, tax information, and personal or family medical history." (ECF No. 27 at 1.) The information therein is potentially embarrassing or otherwise reveals private aspects of an employee's or individual's life. *See Robert F. v. N. Syracuse Cent. Sch. Dist.*, No. 18-CV-594 (LEK) (ATB), 2020 U.S. Dist. LEXIS 261400, at *7-8 (N.D.N.Y. July 21, 2020) (affirming the entry of the protective order due to the potentially embarrassing or private nature of personnel records).

Plaintiffs argue that the personal information should be redacted from the personnel files (ECF No. 27 at 2). However, the court in *McDonnell v. First. Unum Life Ins. Co.* found that redacting employees' records, which contained performance evaluations and compensation information, simply was not enough to protect non-parties' privacy interests. *McDonnell v. First. Unum Life Ins. Co.,* No. 10-CV-08140 (RPP), 2012 U.S. Dist. LEXIS 434, at *7 (S.D.N.Y. Jan. 3, 2012). Therefore, like *McDonnell*, a confidentiality order would quell Defendant's

9

concerns here. *Fischman v. Mitsubishi Chem. Holdings*, No. 18-CV-8188 (JMF), 2019 U.S. Dist. LEXIS 115616, at *19 (S.D.N.Y. July 11, 2019) ("Defendants' concerns about disclosure of privileged or confidential information can be mitigated, if not eliminated, through an appropriate protective order."); *Phillips v. City of New York*, No. 15-CV-1795 (JBW) (CLP), 2016 U.S. Dist. LEXIS 199167, at *9-10 (E.D.N.Y. Jan. 8, 2016) (finding it "impossible to determine whether redaction would be adequate or render the [personnel files] incomprehensible" so a protective order was warranted).

Plaintiffs argue that potential witnesses may be hesitant to testify if they are subjected to a confidentiality order. This is because if witnesses are to sign a confidentiality order, they may have concerns for later allegations that they breached the order. (ECF No. 27 at 2.) In addition, Plaintiffs are especially concerned that the confidentiality order would result in a witness's fear of retaliation, since all witnesses' names would need to be turned over to Defendant. (*Id*.) Notably, Plaintiffs do not cite to any case law to support their proposition.

Plaintiffs' concerns about retaliation because of witness name disclosure fly in the face of the mandate that parties must reveal their witnesses in initial disclosures and for trial preparation purposes. *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (3)(A)(i) (stating that "a party must provide to the other parties" the names of those likely to have discoverable information or to be presented as witnesses). Generalized fear of retaliation is an insufficient ground.

It is also purely speculative that the witnesses would be fearful and not forthcoming in testifying if they are expected to sign a confidentiality order. In *Doe No. 2 v. Kolko,* the court found that plaintiff articulated a specific harm from disclosing his identity—that he would suffer from post-traumatic stress disorder, bipolar discover, and depression if his identity is revealed in that case concerning sexual abuse. *See Doe No. 2 v. Kolko,* 242 F.R.D. 193, 194, 199 (E.D.N.Y.

10

2006). The *Doe* court further found that defendants' concern that signing the protective order before testifying about an individual would have a chilling effect was speculative. *Id.* at 199. To support their argument, the defendants pointed to two potential witnesses who did not want to cooperate. *Id*. The *Doe* court found, however, that the witnesses did not indicate that the protective order would "further inhibit their willingness to participate in discovery." *Id*. All that was required by the witnesses from the acknowledgement was that the person who received the information refrain from further disclosing it. *Id.*

Like the defendants in *Doe*, Plaintiffs here cannot point to any concrete evidence that the witnesses would be fearful of accusations regarding breach of the confidentiality order they would have to sign or fear of reprisal from Defendants. Indeed, the *absence* of a confidentiality order could have the opposite intended effect—that is, without a confidentiality order, potential witnesses would be overly cautious about testifying given that their own information could be disseminated to the public. *See Corrado v. New York State Unified Court Sys.*, No. 2012-CV-1748 (DLI) (MDG), 2013 U.S. Dist. LEXIS 208279, at *5 (E.D.N.Y. Dec. 10, 2013) (finding that defendant demonstrated good cause in showing that future witnesses would be hesitant about engaging in internal investigations if files are disclosed to the public). Accordingly, the Court does not find that Plaintiff has established a potential chilling effect in the present case.

Given the sensitivity of the personnel and borrower information in Plaintiff's demands, Defendant's motion to protect this information is granted.

**CONCLUSION**

For the reasons stated above, the motion for a protective order is denied with respect to the company records and granted with respect to personnel and borrower information. Within two weeks of this Order, the parties are directed to meet and confer and submit a joint proposed Confidentiality Order for the Court's review concerning the personnel and borrower files.

Dated: Central Islip, New York
       February 21, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge